IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JONATHAN D. MURPHY, #80898-065,<br><br>              Plaintiff,<br><br>       v.<br><br>ESTELLA DERR, et al.,<br><br>              Defendants. | Civil No. 22-00110 JAO-WRP<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

## ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND

Before the Court is a Prisoner Civil Rights Complaint ("Complaint") filed by pro se Plaintiff Jonathan D. Murphy ("Murphy") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). ECF No. 1. Murphy is currently incarcerated at the Federal Detention Center in Honolulu, Hawaiʻi ("FDC Honolulu"). *See id.* at 1; Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (select "Find By Number," enter "80898-065" in "Number" field, and select "Search") (last visited May 9, 2022). Murphy alleges that FDC Honolulu officials[1] violated the Eighth Amendment's

---

[1] Murphy names as Defendants Warden Estella Derr ("Warden Derr"), Unit

(continued . . .)

prohibition on cruel and unusual punishment by threatening his safety.  ECF No. 1 at 6–8.  For the following reasons, the Complaint is DISMISSED for failure to state a claim for relief, but with partial leave granted to amend.  *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).  If Murphy wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before June 8, 2022.  In the alternative, Murphy may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure ("FRCP") 41(a)(1).

## I.    <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

---

(. . . continued)
Manager Robl ("Robl"), Case Management Coordinator Lopez ("Lopez"), and Head of Psychology Dr. Pysh ("Dr. Pysh") in both their individual and official capacities.  ECF No. 1 at 1–3.

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.    MURPHY'S CLAIMS[2]

Murphy alleges that "FDC Honolulu" housed him with another inmate, Russell Monlux, beginning on February 14, 2022.  ECF No. 1 at 6.  According to Murphy, the "institution" was "fully aware of . . . Monlux's history of assaulting cellmates and [his] violent history."  *Id.*  Murphy "confirmed" that Monlux had

---

[2]  Murphy's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

assaulted FDC Honolulu staff and seven cellmates, and that "the court" had ordered Monlux to undergo a psychiatric evaluation. *Id.* Murphy was locked in a cell with Monlux each night, between the hours of 8:45 p.m. and 6:00 a.m. *Id.* During this time, Murphy was subjected to Monlux's "homicidal and psychotic rants." *Id.* at 6–7.

Monlux was "under observation" by Dr. Pysh between January 21, 2022 and February 14, 2022. *Id.* at 6. According to Murphy, Monlux also sent "daily emails" to Warden Derr. *Id.* at 7. These emails were "incoher[e]nt and irrational." *Id.* Murphy alleges that Warden Derr was "aware of . . . Monlux's psychotic violent history." *Id.* Murphy further alleges that Robl, as unit manager, was "aware of the danger posed by . . . Monlux." *Id.* Murphy further alleges that Lopez was aware of Monlux's "case" and "recent court appearances for psychiatric evaluation." *Id.*

According to Murphy, he discussed being housed with Monlux with "Unit Co Paalani," who is not named as a defendant. *Id.* Murphy seeks $75,000 and an order directing "Defendant to refrain from retaliating against him and [to] consider moving . . . Monlux." *Id.* at 11.

### III.   <u>DISCUSSION</u>

**A.   Legal Framework for Bivens Claims**

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action only twice. *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843, 1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation

that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[3]  *Id.* (quoting *Malesko*, 534 U.S. at 68).  Indeed, the Court has suggested that "the analysis in [its] three *Bivens* cases might have been different if they were decided today."  *Id.* at ___, 137 S. Ct. at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action.  *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018).  If a claim is precluded, that is the end of the matter.  If a claim is not precluded, courts then apply a two-step test.

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context.  *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018).  The

---

[3]  The Supreme Court declined to create a *Bivens* remedy in the following cases:  a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); and a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843.

6

context is new "[i]f the case is different in a meaningful way from previous *Bivens*

cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at

1859.  If the plaintiff is seeking a *Bivens* remedy in a new context, then courts

proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met.

"First, the plaintiff must not have any other adequate alternative remedy." *Ioane*,

939 F.3d at 951 (internal quotation marks and citation omitted).  "Second, there

cannot be any 'special factors' that lead the court to believe that Congress, instead

of the courts, should be the one to authorize a suit for money damages." *Id.* at

951–52 (some internal quotation marks, brackets, and citation omitted).  Although

the Supreme Court has yet to define the term, "special factors," it has explained

that "the inquiry must concentrate on whether the Judiciary is well suited, absent

congressional action or instruction, to consider and weigh the costs and benefits of

allowing a damages action to proceed." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at

1857–58.

**B.    Official Capacity Claims**

Murphy names Warden Derr, Unit Manager Robl, Case Management

Coordinator Lopez, and Head of Psychology Dr. Pysh in both their individual and

official capacities.  ECF No. 1 at 1–3.

"A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted). "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (citation omitted). Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (internal quotation marks and citation omitted).

Any *Bivens* claims against Warden Derr, Robl, Lopez, and Dr. Pysh in their official capacities are therefore DISMISSED with prejudice.

## C.    Supervisory Liability

Murphy names as Defendants various supervisory officials, including the warden, a unit manager, a case management coordinator, and the head of psychology at FDC Honolulu. ECF No. 1 at 1–3.

"In the limited settings where *Bivens* does apply, . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). This is because "[t]he purpose of *Bivens* is to deter the *officer*." *Abbasi*, 137 S. Ct. at

1860 (internal quotation marks and citation omitted).  "*Bivens* is not designed to

hold officers responsible for acts of their subordinates."  *Id.* (citation omitted).

A *Bivens* claim must be "brought against the individual official for his or her

own acts, not the acts of others."  *Id.*; *see also Jones v. McFadden*, No. 1:09–cv–

00957–DLB (PC), 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a

named defendant holds a supervisorial position, the causal link between him and

the claimed constitutional violation must be specifically alleged." (citations

omitted)).  Thus, to state a claim for relief under *Bivens* based on a theory of

supervisory liability, the plaintiff must allege facts showing that supervisory

defendants:

> (1) personally participated in the alleged deprivation of
> constitutional rights; (2) knew of the violations and failed to act
> to prevent them; or (3) promulgated or implemented a policy so
> deficient that the policy itself is a repudiation of constitutional
> rights and is the moving force of the constitutional violation.

*Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal

quotation marks and other citation omitted).

Here, Murphy generally asserts that "FDC Honolulu" housed Monlux with

him beginning on February 14, 2022.  ECF No. 1 at 6.  Murphy does not identify,

however, who decided to house him with Monlux.  Nor does Murphy say who

could have moved him to another cell.  Moreover, Murphy does not allege that any

Defendant knew that housing him with Monlux threatened his safety yet failed to

act.  Finally, Murphy does not allege that any Defendant promulgated or implemented an unconstitutional policy.  Any allegation by Murphy that these four supervisory prison officials are liable purely because of the acts of those under their supervision must be dismissed.  *See Fries v. Kernan*, Case No. 1:18-cv-00652-LJO-SKO (PC), 2018 WL 11260954, at *8 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel . . . are somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim.").   For any claims against Defendants to proceed, Murphy must plausibly allege that Warden Derr, Robl, Lopez, or Dr. Pysh violated his rights through their own actions.  *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." (citation omitted)).

## D.    Threat to Safety

Murphy alleges that Defendants violated the Eighth Amendment's prohibition on cruel and unusual punishment by threatening his safety.  ECF No. 1 at 6.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat to safety claim.  The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal

prison official's deliberate indifference to prisoner safety.  *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim." (citation omitted)).  Several district courts have also recognized failure to protect claims under *Bivens*.  *See McDaniels v. United States*, No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at \*5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at \*7–8 (E.D. Cal. Oct. 26, 2018) (concluding that a failure to protect claim was not a *Bivens* expansion); *Marquez v. United States*, Case No.: 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at \*4 (S.D. Cal. Apr. 25, 2018).

Even assuming the existence of a *Bivens* remedy, Murphy fails to state a plausible claim.  *See Hernandez*, 582 U.S. at ___, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy — is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim." (citations omitted)).

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted).  Prison

officials, therefore, "have a duty to protect prisoners from violence at the hands of

other prisoners."  *Id.* at 833 (internal quotation marks, alteration, and citation

omitted).

A prison official violates the Eighth Amendment, however, only when two

requirements are met.  "First, the deprivation alleged must be objectively,

sufficiently serious."  *Id.* at 834 (citations omitted).  "For a claim . . . based on a

failure to prevent harm, the inmate must show that he is incarcerated under

conditions posing a substantial risk of serious harm."  *Id.* (citation and footnote

omitted).  Second, the plaintiff must show deliberate indifference — that is, that

"the [prison] official kn[ew] of and disregard[ed] an excessive risk to

inmate . . . safety."  *Id.* at 837.  "[T]he official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  *Id.*

Here, Murphy has not plausibly alleged that he faced a "substantial risk of

serious harm."  *Farmer*, 511 U.S. at 834.  Murphy contends that he should not

share a cell with Monlux because of Monlux's "violent history."  ECF No. 1 at 6.

To the extent Murphy alleges that Monlux assaulted other inmates and FDC

Honolulu staff, however, he does not say when the assaults occurred.  Moreover,

Murphy does not allege that Monlux ever harmed him, attempted to do so, or even

threatened him.  The fact that Monlux had committed violent acts in the past, without more, does not necessarily create a "substantial risk of serious harm."  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."); *see also Belvins v. San Bernardino Cnty. Sheriff's Dep't*, Case No. 5:19-cv-01247-MWF (AFM), 2019 WL 3255161, at *7 (C.D. Cal. July 19, 2019) ("[T]he mere fact that a new cellmate had engaged in violent behavior at some time in the past does not show that the cellmate posed an objectively serious risk to plaintiff if celled together." (citing *id.*)).

In addition, Murphy has not plausibly alleged that any Defendant acted with deliberate indifference to his safety.  *See Farmer*, 511 U.S. at 834.  Murphy does not allege that he ever complained to Warden Derr, Robl, Lopez, or Dr. Pysh about sharing a cell with Monlux.  Although Murphy alleges that he discussed his situation with "Unit Co Paalani," ECF No. 1 at 7, Paalani is not named as a defendant.  In addition, Murphy does not say what he told Paalani or when he said it, and Murphy acknowledges that he did not voice his concerns beyond Paalani. *Id.*  Nothing suggests that Paalani conveyed whatever Murphy told him to Warden Derr, Robl, Lopez, or Dr. Pysh.  Murphy, therefore, has not plausibly alleged that a named defendant was deliberately indifferent to a substantial risk of serious harm.

13

*See, e.g.*, *Chatham v. Adcock*, Civil Action No. 3:05-CV-0127-JTC, 2007 WL 2904117, at *24 (N.D. Ga. Sept. 28, 2007) ("The fact that [the inmate] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'" (citations omitted)), *aff'd*, 334 F. App'x 281 (11th Cir. 2009). Thus, Murphy has failed to state a plausible claim for relief based on his safety at FDC Honolulu.

## E.  Injunctive Relief Under *Bivens*

In his request for relief, Murphy asks for $75,000 and for "the Court to order Defendant to refrain from retaliating against him and [to] consider moving . . . Monlux." ECF No. 1 at 11.

"*Bivens* does not encompass injunctive and declaratory relief where . . . the equitable relief sought requires official government action." *Solida*, 820 F.3d at 1093 (citations omitted); *see Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)). Thus, to the extent Murphy seeks declaratory or injunctive relief requiring government action, such relief is not available under *Bivens*.[4]

---

[4] "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, No. CV-20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020)

(continued . . .)

14

## IV.   <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED with partial leave granted to amend.  Murphy

may file an amended pleading on or before June 8, 2022.  Murphy may not expand

his claims beyond those already alleged herein or add new claims, without

explaining how those new claims relate to the claims alleged in the Complaint.

Claims that do not properly relate to those in the Complaint are subject to

dismissal.

Murphy must comply with the Federal Rules of Civil Procedure and the

Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended

complaint be complete in itself, without reference to any prior pleading.  An

amended complaint must be short and plain, comply with Rule 8 of the Federal

---

(. . . continued)
(citation omitted).  To bring such a claim, a prisoner must:

> (1) invoke jurisdiction under 28 U.S.C. § 1331, (2) allege facts
> to state a colorable ongoing Eighth Amendment claim, (3) name
> as a defendant the person who would be responsible for carrying
> out any order for injunctive relief, and (4) request particular
> injunctive relief that is specifically targeted to resolving the
> ongoing Eighth Amendment violation.

*Id.*; *see also Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A]
plaintiff may sue a federal officer in his or her official capacity, invoking
jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers, and
seek injunctive relief to remedy alleged constitutional violations.").  Here, for the
reasons set forth above, Murphy fails to state a colorable Eighth Amendment
claim.

15

Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

## V.    28 U.S.C. § 1915(g)

If Murphy fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

A qualifying dismissal counts as a strike whether the prisoner was litigating in forma pauperis or after paying a filing fee.  *See Belanus v. Clark*, 796 F.3d 1021, 1028 (9th Cir. 2015) ("[W]e conclude that the fact that a prisoner pays the docket fee is no barrier to a court, when dismissing the case as frivolous, directing that the dismissal count as a strike under 28 U.S.C. § 1915(g).").

16

## VI.   **CONCLUSION**

(1) The Complaint, ECF No. 1, is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

(2) Murphy may amend his pleading, however, by curing the deficiencies in his claims on or before June 8, 2022.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Murphy may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Murphy may voluntarily dismiss this action pursuant to FRCP 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Murphy a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 9, 2022.



Jill A. Otake
United States District Judge

Civil No. 22-00110 JAO-WRP, *Murphy v. Derr, et al.*; Order Dismissing Complaint with Partial Leave to Amend